[Civ. No. 4051. First Appellate District, Division Two.—December 15, 1921.]

W. H. WHEAT et al., Plaintiffs and Appellants, v. BIG PINES LIME AND TRANSPORTATION COMPANY et al., Defendants and Respondents; JOHN POTTER et al., Cross-Plaintiffs and Appellants; E. E. EVERETT, Intervener and Appellant.

[1] BONDS—CLAIMS OF BONDHOLDERS—REMEDY—ACTION AT LAW.—In this action by bondholders to establish an equitable lien on certain real property covered by the deed of trust securing the payment of the bonds, it is held that the plaintiffs have a plain, speedy, and adequate remedy at law pursuant to the provisions of such deed for a sale of the property at public auction to satisfy their claims.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles Wellborn, Judge.  Affirmed.

The facts are stated in the opinion of the court.

John O. Bender, for Plaintiffs and Appellants and Intervener and Appellant.

Thomas H. McKee for Cross-Plaintiffs and Appellants.

Leonard B. Slosson, Robert Mitchell, Fred W. Morrison and Benno M. Brink for Defendants and Respondents.

LANGDON, P. J.—In this action there is an appeal by the plaintiffs and by the cross-plaintiffs, John and Cora M. Potter, from a judgment denying them equitable relief.  The appeals were taken upon the judgment-roll, consisting of about 600 pages of transcript, and the contention of the appellants is that the findings of fact do not support the conclusions of law.

We have carefully read the transcript and the findings and they reveal facts so exceedingly complex and parties so numerous that we deem it expedient and necessary in the interest of clarity to set out herein only such portions of the findings as are necessary for an understanding of the main features of the controversy.

On the first day of March, 1912, the Lone Pine Utilities Company, a corporation, hereinafter called the Utilities Company, issued its bonds in the sum of $100,000, payable twenty years after said date.  All of said bonds were issued and are outstanding and are the bonds referred to herein as belonging to plaintiffs and some of the defendants.  To secure the payment of said bonds, said corporation executed a deed of trust to the Los Angeles Abstract & Trust Company, as trustee, conveying to said trustee all property it then owned or might thereafter acquire.

Thereafter it acquired certain properties described in plaintiffs' third amended complaint, which properties are hereinafter referred to as the lime claims and rights of way.  Said trust deed was duly recorded.  Subsequently, the Los Angeles Trust and Savings Bank was substituted as trustee in the place and stead of the former trustee, and said bank

is now the duly appointed, qualified, and acting trustee under said deed of trust.

The interest payments on said bonds are represented by coupons thereto attached and it is provided in each of said bonds that said coupons must be presented for payment at the office of the trustee, and that in case of default in the payment of any of said coupons when due for a period of three months after presentation at the office of the trustee, the principal of said bonds may become due and payable with the effect and subject to the conditions provided in the deed of trust securing said bonds. Said deed of trust provides that the principal of said bonds shall not become due and payable after such default in payment of interest coupons unless the holders of at least fifty-one per cent of the total amount of said bonds outstanding shall make a declaration to that effect to the trustee and shall request the trustee to begin foreclosure proceedings accordingly. No such declaration and no such request has ever been made to said trustee, and the principal of said bonds, or of any of them, has not become due or payable and is not now due or payable. Said interest coupons which have become due and payable have not been presented to the trustee for payment and no default has been declared in the payment of said coupons. Said deed of trust is still in full force and effect as to all of its terms and conditions, and said issue of bonds is still secured by the property referred to hereinbefore.

On the twentieth day of August, 1914, said Utilities Company granted and transferred said properties to defendant Big Pine Lime & Transportation Company, subject to said deed of trust, and the deed of conveyance was accepted by said grantee and contained the following recital: "Subject to a trust deed given by the Lone Pine Utilities Company, a corporation, to the Los Angeles Abstract & Trust Company, a corporation, to secure a bond issue of $100,000. . . . " Said conveyance was duly recorded.

On the twenty-seventh day of May, 1917, defendant Rickershauser obtained a judgment against said Big Pines Lime & Transportation Company in the superior court of Los Angeles County for the sum of $9,760.60, and thereafter an execution was duly issued upon said judgment and on April 19, 1918, in satisfaction of said judgment, the sheriff sold to said Rickershauser, at public sale, as provided by law,

all of the right, title, and interest of said Transportation Company in and to said lime claims. Thereafter, on April 21, 1919, said sheriff executed and delivered to said Rickershauser a deed conveying to him said property in fee. Thereafter, on April 28, 1919, said Rickershauser sold and conveyed said property to defendant Sheepshead Lime Company, a corporation. This conveyance was duly recorded and said last-named corporation now holds said property subject to the lien of the deed of trust securing said issue of bonds.

All of the parties to this action, and who are the owners of said bonds, have a plain, speedy, and adequate remedy at law pursuant to the provisions of said deed of trust, and can have said property sold at public auction at any time to satisfy their claims alleged in said complaint by complying with said provisions. Said parties have not complied with said provisions and have taken no steps to secure relief thereunder.

Upon the foregoing facts no possible question could arise as to appellants' right to recover in this action; there would absolutely be no such right. However, the appellants contend that a different legal situation arises by reason of the existence of the following facts found by the court:

On August 15, 1914, the Lone Pine Mill & Lumber Company, a corporation, hereinafter called the Lumber Company, was the owner in fee simple of the property known and designated as the "Big Pines," which property is particularly described in said third amended complaint. On said date and long prior thereto said property was subject to a mortgage executed by one M. C. Rodgers to secure the payment of one promissory note for $5,000, dated March 1, 1911. Said mortgage was duly recorded. On August 15, 1914, said corporation transferred said property subject to said mortgage, by grant deed, to said Big Pines Lime & Transportation Company. Said grant deed contains the following recital: "Subject to a mortgage executed by M. C. Rodgers, a single woman, to secure one note for five thousand dollars dated March 1, 1911, payable on or before two years after date, with interest at ten per cent per annum, payable quarterly, in favor of A. R. Lendner."

On September 14, 1915, one Melissa H. L. Ford was the owner of said promissory note and the mortgage securing the same. Said mortgage was not paid, and on September

14, 1915, said Ford instituted an action in the superior court of the state of California, in and for the county of Los Angeles, to foreclose said mortgage, said action being entitled *Melissa H. L. Ford, Plaintiff,* v. *M. C. Rodgers et al., Defendants,* and numbered B–29194. At the time said action was filed a notice of pendency of said action was duly recorded in the office of the county recorder of said county and all persons holding conveyances from or under the mortgagor or having a lien thereon at the time of the institution of said action, and which appeared of record at said time, were made parties to the action and were duly served with summons therein. Thereafter, a decree of foreclosure and an order of sale were duly made and said property sold by the sheriff and purchased by said Ford, the plaintiff in said action, on or about December 20, 1915. Said property was not redeemed within the time required by law and on the twenty-first day of December, 1916, the sheriff issued a deed conveying said property to said Ford.

On or about February 13, 1917, said Ford entered into a contract with defendant Robert Mitchell to sell and convey to him said property, and, thereafter, said Ford conveyed to said Mitchell all her right, title, and interest in and to said property and the deed conveying said property was duly recorded on February 1, 1918.

Now, in this piece of property so conveyed to Mitchell, and which we shall call the "Big Pines property," the appellants claim an interest by reason of the following facts:

During the month of June, 1914, said Lumber Company and said Utilities Company, by and with the consent of their stockholders, bondholders and creditors, entered into an agreement to merge and consolidate their interests, and, to carry out the purposes of said agreement, they organized and incorporated said Big Pines Lime & Transportation Company with a capital stock of $1,000,000, divided into 1,000,000 shares of the par value of one dollar each. It was agreed, as part of said merger, that the Transportation Company would issue a new series of bonds in the sum of $250,000 and use the same for the general purposes of the corporation and to take care of its obligations. Thereupon, the old corporations transferred their properties to the new corporation, as hereinbefore set forth, and, in consideration therefor the Transportation Company agreed to issue to the

Lumber Company 100,000 shares of its capital stock, to deliver to it $40,000 worth of the new bonds proposed to be issued and to pay its creditors out of the proceeds of the new bond issue. To the Utilities Company, the Transportation Company agreed to issue 508,150 shares of its capital stock, to pay its creditors out of the proceeds of the new bond issue, and to issue to the holders of the bonds issued by said corporation on March 1, 1912, and in exchange therefor bonds of the new issue to the amount of $100,000. The Transportation Company did issue to the Lumber Company 100,000 shares of its capital stock and to the Utilities Company 508,150 shares of its capital stock. The Transportation Company also issued and delivered to the stockholders of the Lumber Company certificates evidencing their respective rights to the $40,000 worth of bonds whenever the same should be issued. Thereafter, the old corporations were dissolved by operation of law, having failed to pay the state license tax for the year 1915.

To secure said proposed issue of bonds, the Transportation Company executed a trust deed to the Los Angeles Trust & Savings Bank, covering all of the properties transferred to it by the Lumber Company and the Utilities Company. Said trust deed bears date of September 1, 1914, and was duly recorded. Said deed recited that it was given to secure an issue of bonds, which bonds were to be used in promoting any of the lawful purposes or objects for which the corporation was organized, among which are: The development of power plants, power systems, and numerous other enterprises more or less related thereto; also for the marketing of real property acquired by the company and the construction of a hotel, places of amusement, halls, dwelling-houses, and other improvements deemed advisable by the board of directors; also for the payment of the indebtedness formerly existing against the Lone Pine Mill & Lumber Company and the Lone Pine Utilities Company, including the bonded indebtedness of said last-named company, not exceeding $100,000. It was intended that said trust deed was to be a first lien upon property conveyed to the Transportation Company, but some of the bondholders of the Utility Company refused to exchange their old bonds for the new bonds and so release the prior lien created by the trust deed of March, 1912, given by the Utilities Company.

For that reason it became impossible to carry out the plan of the corporation and the new bonds were never issued, and the intention to issue said bonds was abandoned. The trust deed of September 1, 1914, given by the Transportation .Company to secure a proposed bond issue, was, therefore, given without consideration, no bonds having been issued, and it is of no force and effect.

It is the contention of the appellants, however, that, regardless of the fact that they have acquired no legal rights under the trust deed given by the Transportation Company, nevertheless, as bondholders of the Utilities Company, an equitable lien is created in their favor upon all of the property mentioned in said trust deed of the Transportation Company because of the fact that the Transportation Company agreed to issue its bonds and execute its trust deed to secure the same and to exchange appellants' bonds for the new bonds, and because the Transportation Company accepted the transfer of the property of the Utilities Company upon these conditions.

[1] We shall not deal with the question of what equities might have been presented had the appellants parted with anything of value in reliance upon this agreement, or had they lost any right or advantage of any kind, or were in a position where they were unable to enforce their claims by a plain, speedy, and adequate remedy at law. Such a question is not presented here. For the appellants have, as security for their bonds, precisely the same property which they always had and precisely the same security which they accepted in purchasing their bonds. They never gave up any of their legal rights under the trust deed securing these bonds and there is no reason why they should not avail themselves of their plain, speedy, and adequate legal remedy. Under such circumstances, they show no basis for equitable interference.

The property sought to be bound by an equitable lien consists of the "Lime Property," upon which appellants have, admittedly, a first lien under the trust deed of 1912, and another piece of property, the "Big Pines Property," upon which a lien, prior to any possible right of appellants, has already been foreclosed and the property sold thereunder and all equities of redemption foreclosed. As to the "Big Pines Property," the rights of the appellants, if any they

had, were barred either in the foreclosure proceeding or in the subsequent action to quiet title to this land.

There is no merit in the claim of cross-plaintiffs John and Cora M. Potter, that the defendant Mitchell's purchase of the "Big Pines Property" was in reality an assertion of his equity of redemption as a bondholder having an equitable lien upon the property, and that such redemption inured to the benefit of all the bondholders of the Utilities Company. If by any process of reasoning these bondholders did have any equity of redemption in this property, such equity was never asserted by any of them. The sale of the property to the mortgagee became final and the property became hers absolutely, free from all equities, some time before she sold it to Mitchell.

There are no other matters requiring discussion and the judgment appealed from is affirmed.

Nourse, J., and Sturtevant, J., concurred.